**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BEVAN,  Plaintiff,  v.  BLUE RIDGE CABLE/PENCOR SERVICES, INC.,,  Defendant. | CIVIL ACTION NO. 3:04-CV-0255  (JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is Defendant's Motion For Summary Judgment on All Claims in Plaintiff's Complaint (Doc. 17). For the reasons set forth below, the Court will grant Defendant's motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441, and 28 U.S.C. § 1367.

## BACKGROUND

The facts in this case are relatively undisputed and are as follows: Plaintiff, Edward Bevan, was born on December 29, 1938, and is currently sixty-seven (67) years old. (Doc. 24, Bevan at 6.) In April of 1988, Plaintiff was hired by Defendant Blue Ridge Cable/Pencor Services, Inc. (Doc. 24, Bevan at 23; Doc. 25, Kintner at 13.) After awhile, Plaintiff was promoted to a supervisor position in Defendant's Hawley office. (Doc. 24, Bevan at 26). While employed as a supervisor, Plaintiff reported to the Resident Manager, Norman Bohs. *Id.*, at 40-43. During his time as supervisor, Plaintiff did not receive performance evaluations. *Id.*, at 44.

Then in November of 1997, Plaintiff was offered another promotion to the Resident Manager position at the Hawley office. (Doc. 24, Bevan at 44; Doc. 25, Kintner at 27-28.)

As a result of this promotion, Norman Bohs was moved to a supervisor position in the Hawley office and reported directly to Plaintiff.  (Doc. 24, Bevan at 46; Doc. 25, Semmel at 30-32.)  Plaintiff submitted evidence that the change in positions resulted from Defendant's questioning of Bohs' managerial skills.  (Doc. 26, Evans at 19).  Plaintiff further submitted evidence that he was specifically promoted to fix problems that had been occurring at the Hawley office.  (Doc. 25, Semmel at 29-32).

In March 2000, Defendant created a Northeastern Regional Manager position and promoted Mr. Kintner to fill the position.  (Doc. 24, Bevan at 60; Doc. 25, Kintner at 13.)  At that time, Plaintiff began reporting directly to Mr. Kintner.  (Doc. 24, Bevan at 60.)  Defendants submitted evidence that during Plaintiff's employment as Resident Manager of the Hawley office, Plaintiff was not functioning effectively in his position due to problems with his managerial skills.  (Doc. 25, Kintner at 22-23, 34-35, Semmel at 27-28; Doc. 26, Evans at 12, 22).  Plaintiff submitted evidence that an employee at the Hawley office was unhappy with his employment and intentionally undermined Plaintiff's management.  (Doc. 26, Evans at 16-17).  Plaintiff further submitted evidence that Mr. Kintner would tell Plaintiff that he was not involved with issues within the office, but failed to make suggestions to correct the situation.  (Doc. 24, Bevan at 68, 72, 220).

In August 2001, Mr. Kintner eliminated the Resident Manager position at the Hawley office.  (Bevan at 150.)  At that time, Plaintiff was demoted from Resident Manager to supervisor at Defendant's Stroudsburg office.  (Bevan at 150).  Plaintiff submitted evidence that the supervisor position was created for Plaintiff rather than terminating his employment, since there was no need for another supervisor position at Stroudsburg.  (Evans at 31, 32, 46; Semmel at 27).   This practice was pursuant to

2

company policy and referred to as the "deadwood pile." (Evans at 32). Defendant, however, submitted evidence that Mr. Kintner believed that there was a need for an additional supervisor in Stroudsburg and expressed that need to Mr. Bevan. (Masenheimer at 13-14.) Plaintiff agrees that the Stroudsburg office had only four supervisors, the same amount as at Hawley, but had more unit men and more customers. (Doc. 24, Bevan at 88; Doc. 25, Kintner at 69.) Plaintiff submitted evidence that the transfer made Plaintiff the least senior employee in the Stroudsburg office. (Doc. 26, Evans at 35). Defendant submitted evidence that the transfer did not in any way reduce Mr. Bevan's seniority, salary or benefits. (Doc. 24, Bevan at 87-89; Doc. 25, Kintner at 44, Masenheimer at 29.) Mr. Bevan continued to report to Mr. Kintner. (Doc. 24, Bevan at 91.) Following the change to supervisor, Plaintiff was given a performance evaluation by Mr. Kintner. (Doc. 24, Bevan at 80). The evaluation indicated that Plaintiff "needs improvement" in "job knowledge/skills" and "initiative/problem solving." (Doc. 24, Bevan at 81-83; Doc. 25, Kintner at 57-58). The evaluation also noted that Plaintiff's performance had been improving since his transfer to Stroudsburg. (Doc. 25, Kintner at 65).

In late 2001, Defendant created a Cost Reduction Committee ("Committee") to analyze the company's financial stability in light of increased competition. (Kintner at 31-32; Masenheimer at 15; Semmel at 11; Evans at 36-38.) The Committee consisted of five members, including Mr. Semmel, Mark Masenheimer, David Masenheimer, Jeff Gehman, and Lawrence Evans. (Doc. 26, Evans at 37; Doc. 25, Semmel at 12.) The Committee was kept secret and all documents were shredded. (Doc. 26, Evans at 39). At the end of the investigative period, the Committee elected to lay off twelve (12)

employees, freeze or reduce several employees' salaries, close offices, terminate several vendor contracts, and sell land.  (Doc. 25, Semmel at 14-17, 45; Doc. 26, Evans at 42.)  Mr. Kintner, as the Regional Manager, recommended to the Committee the dissolution of one of the supervisor positions at the Stroudsburg facility.  (Doc. 25, Masenheimer at 17, Kintner at 66, 70, Semmel at 10; Doc. 26, Evans at 41.)  As a result, Plaintiff was laid off along with the eleven other employees.  Defendant submitted evidence that Plaintiff was chosen because he was the least senior and the least knowledgeable supervisor of the five individuals who held the position at the Stroudsburg facility.  (Doc. 25, Kintner at 49, 70, Masenheimer at 27-28; Doc. 26, Evans at 34-35.)

Plaintiff was laid off on or about April 5, 2002.  (Doc. 24, Bevan at 16.)  Plaintiff was sixty-three (63) years old at the time of his dismissal, and was the oldest employee at either the Hawley or Stroudsburg offices.  (Doc. 24, Bevan at 179).  Defendant submitted evidence that Plaintiff's position as the oldest employee was not known until after he was terminated.  (Doc. 43, Evans at 43.)  At the time of his dismissal, Plaintiff was told that his supervisor position was being dissolved.  (Doc. 24, Bevan at 93).  Plaintiff was not replaced and, instead, his job duties were assumed by the four other supervisors at the Stroudsburg office.  (Doc. 25, Masenheimer at 21).

Following his dismissal, Plaintiff received a severance package which included: (1) $18,571.28 in severance pay; (2) three months paid COBRA benefits; (3) pension bridging payments from the time he was separated until he began collecting his pension in January of 2004; and (4) other benefits, including free cable for three months.  (Doc. 24, Bevan at 21, 130-134, Ex. 3; Doc. 26, Evans at 28.)  In addition, Plaintiff also collected unemployment compensation.  (Doc. 24, Bevan at 20-21.)  Currently, Plaintiff

4

receives pension benefits from Defendant.  (Doc. 24, Bevan at 126.)

In March 2003, based on the volume of business at the Stroudsburg office, Defendant offered Plaintiff reinstatement to a Routing Supervisor position at its Stroudsburg facility.  (Doc. 24, Bevan at 105; Doc. 26, Evans at 48-49.)  Plaintiff was qualified to fill the position and would have returned to work with the same salary, benefits and seniority.  (Doc. 24, Bevan at 107; Doc. 26, Evans at 50.)  Plaintiff submitted evidence that he did not accept the offer because an agreement had not been reached concerning back pay.  (Doc. 24, Bevan at 111-12.)  Defendant, on the other hand, submitted evidence that Plaintiff declined the offer because he had removed himself from the labor market as of April of 2002.  (Doc. 24, Bevan at 16-17.)  Subsequently, Defendant hired additional supervisors at the Stroudsburg office.  (Doc. 26, Matelevich at 13, 16.)  Currently, there are five supervisors in Stroudsburg and four supervisors in Hawley.  (Doc. 25, Masenheimer at 9).

Plaintiff then filed a Complaint against Defendant in the Northampton County Court of Common Pleas, alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, ("ADEA") and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 951, *et seq.*, ("PHRA").  Defendant removed the Complaint to this Court on February 4, 2004.  (Doc. 1.)  On August 2, 2005, Defendant filed the present Motion for Summary Judgment (Doc. 17).  The motion is fully briefed and the matter is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the

material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### 1)   Discrimination

Plaintiff alleges that Defendant terminated Plaintiff's employment because of his age, in violation of the ADEA and PHRA.  Defendant argues that Plaintiff has failed to establish his prima facie case and, alternatively, has failed to submit evidence that Defendant's proffered legitimate nondiscriminatory reason for Plaintiff's dismissal is pretextual.

### b)   ADEA

The ADEA provides:  "It shall be unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ."  29 U.S.C. § 623(a).  ADEA plaintiffs may establish a cause of action by demonstrating disparate treatment.  *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004).  Moreover, in such instances, proof of discriminatory intent is a crucial component.  *Id.* at 300 (citing *Hazen*, 507 U.S. at 610)).  ADEA plaintiffs with

only indirect evidence of discriminatory intent claiming disparate treatment must proceed under the *McDonnell Douglas* burden-shifting framework. *Id.* In the instant matter, Plaintiff offers only indirect evidence of Defendant's alleged discriminatory intent. Consequently, analysis of Plaintiff's age discrimination claims must proceed under the *McDonnell Douglas* analytical framework.[1]

### i) Prima Facie Case

The burden-shifting framework set forth in *McDonnell Douglas* first requires Plaintiff to establish his prima facie case, which, if successful, raises an inference of age discrimination. *Keller v. Ortix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Weldon*, 896 F.2d at 797. Plaintiff may establish his prima facie case by showing: (1) membership in a protected group, i.e. at least 40 years of age; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." *Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999). "Although a plaintiff may make out a prima facie case with such evidence . . . neither of these is required." *Id.* (citing *Pivirotto*

---

[1] State PHRA claims are subject to the same analysis as federal ADEA claims. *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998). Thus, while the Court will discuss Plaintiff's claims under the framework of the ADEA, the resulting analysis applies with equal force to Plaintiff's PHRA age discrimination claim.

*v. Innovative Sys.*, 191 F.3d 344, 356-57 (3d Cir. 1999)).  Thus, the analysis of whether an inference of discriminatory animus has been raised is governed by the "central focus" of the prima facie case -- that is, whether Defendant treated Plaintiff less favorably than other employees because of his age.  *See Sarullo v. United States Postal Serv.,* 352 F.3d 789, 798 (3d Cir. 2003) (citing *Pivirotto*, 191 F.3d at 352).

"Where the employee is unable to establish a prima facie case, . . . no inference of discrimination is raised and the employer has no burden to proffer a reason for any action."  *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 n.1 (3d Cir. 2001) (citing *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 174 (3d Cir. 1988)).  However, when a prima facie case is established, the burden of production then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for the adverse action."  *Metal Serv. Co.*, 892 F.2d at 347 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Reviewing the evidence offered by Plaintiff in the light most favorable to him, Plaintiff has offered sufficient evidence to establish a prima facie case of age discrimination.  In the present case, Defendant acknowledges that the first three prongs are established.  Rather, Defendant argues that Plaintiff has failed to show circumstances supporting an inference of discrimination.  Specifically, Defendant argues that Plaintiff cannot demonstrate that Defendant retained similarly situated employees that were sufficiently younger than Plaintiff, or that Plaintiff was singled out and treated less favorably than others similarly situated on the basis of his age.  Plaintiff acknowledges that the four other supervisors at the Stroudsburg office were in their

9

forties and fifties, and, therefore, within Plaintiff's protected age category. (*See* Doc. 23 at 10.) However, Plaintiff argues that the other four supervisors were sufficiently younger to establish an inference of discrimination. I agree. As little as a five year difference in age can be sufficient to establish an inference of discrimination. *See, e.g., Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). In the present case, Plaintiff was sixty-three (63) when he was laid off and was the oldest employee at either the Hawley or Stroudsburg offices. (Doc. 24, Bevan at 179). Further, the other four supervisors at the Stroudsburg office were similarly situated with Plaintiff and were treated more favorably when they were retained at the time of Plaintiff's dismissal. Thus, in accordance with *McDonnell Douglas,* the burden shifts to Defendant to provide a facially legitimate reason for the adverse employment action taken against Plaintiff.

### ii)     Non-Discriminatory Reason

An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.* Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257). If, however, Defendant fails to satisfy this minimal burden of

production, the Court must deny Defendant's motion in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

The reasons tendered by Defendant are that the Cost Reduction Committee, which was formed to analyze the company's financial stability in light of increased competition, chose to eliminate one of the five supervisor position at the Stroudsburg office. Further, Defendant asserts that Plaintiff was chosen for dismissal because he was the least senior and the least knowledgeable supervisor of the five individuals who held the position at the Stroudsburg facility. (Doc. 25, Kintner at 49, 70, Masenheimer at 27-28, Semmel at 14-17, 45; Doc. 26, Evans at 34-35, 42.) Clearly, Defendant has satisfied the relatively light burden of production required under *McDonnell Douglas.* Thus, Plaintiff must establish that Defendant's articulated reasons are pretextual.

### iii) Pretext

To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes*, 32 F.3d at 764. The Third Circuit Court of Appeals has held that Plaintiff may establish that Defendant's proffered reasons are "unworthy of credence," *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 204 (3d Cir. 1987), by introducing evidence that the employer subjected individuals outside the protected class to more favorable treatment. *See, e.g., Fuentes*, 32 F.3d. at 765; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 179; *Weldon*, 896 F.2d at 797. If Plaintiff successfully points to evidence sufficient to discredit


Defendant's tendered reasons, Plaintiff need not submit additional evidence beyond the initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). Even where the majority of this evidence comes from uncorroborated deposition testimony, the Third Circuit Court of Appeals has held that this is sufficient to survive summary judgment. *Weldon*, 896 F.2d at 800.

Plaintiff raises three arguments which he believes demonstrate evidence of pretext, they are: (1) that Defendant ignored Plaintiff's long record of excellent service; (2) there were no written policies defining Plaintiff's performance obligations as supervisor in the Stroudsburg office; and (3) an inference of discrimination is raised because Plaintiff's duties were divided amongst the younger remaining supervisors. For the following reasons, I find that Plaintiff has failed to offer evidence sufficient to demonstrate that Defendant's proffered legitimate non-discriminatory reason is pretextual.

First, there is no evidence submitted by Plaintiff to demonstrate that Plaintiff's long record with the company was ignored. Rather, the evidence submitted by both Defendant and Plaintiff acknowledges that Plaintiff had the least seniority in the Stroudsburg office. (Doc. 25, Kintner at 49, 70, Masenheimer at 27-28; Doc. 26, Evans at 34-35.) Second, Plaintiff's argument that no written policies existed does not demonstrate that Defendant's proffered reason is unworthy of credence. Namely, Plaintiff has failed to submit evidence to counter Defendant's assertion that Plaintiff's position was terminated as part of a cost containment in which the Committee elected to lay off twelve (12) employees, freeze or reduce several employees' salaries, close offices, terminate several vendor contracts, and sell land. (Doc. 25, Semmel at 14-17, 45; Doc. 26, Evans at 42.) In addition, Plaintiff has failed to offer evidence to counter

Defendant's proffered reason that Plaintiff was chosen for dismissal because he was the least knowledgeable supervisor of the five individuals who held the position at the Stroudsburg facility.  Rather, Plaintiff acknowledges that he was not replaced and, instead, his job duties were assumed by the four other supervisors at the Stroudsburg office.  (Doc. 25, Masenheimer at 21).  Further, Plaintiff submitted evidence that an employee at the Hawley office was undermining Plaintiff's management.  (Doc. 26, Evans at 16-17).  Plaintiff also submitted evidence that Mr. Kintner would tell Plaintiff that he was not correctly managing situations in the Hawley office, though he failed to make suggestions to correct the situation.  (Doc. 24, Bevan at 68, 72, 220).  Moreover, Plaintiff agrees that he was given a performance evaluation by Mr. Kintner that indicated that Plaintiff "needs improvement" in "job knowledge/skills" and "initiative/problem solving." (Doc. 24, Bevan at 81-83; Doc. 25, Kintner at 57-58).  This evidence supports Defendant's proffered reasons, rather than demonstrating that they are unworthy of credence.  Third, Plaintiff's argument that an inference of discrimination is raised because Plaintiff's duties were divided amongst the younger remaining supervisors does not establish that Defendant's proffered legitimate reason is pretextual.

     Therefore, Plaintiff failed to submit evidence from which a factfinder could reasonably disbelieve Defendant's articulated reasons, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action.  Consequently, because the Court finds there are no genuine issues of material fact concerning Defendant's facially nondiscriminatory reasons for termination of Plaintiff's employment, Defendant's motion for summary judgement will be granted.

**CONCLUSION**

Plaintiff failed to submit evidence from which a factfinder could reasonably disbelieve Defendant's proffered legitimate non-discriminatory reasons for Plaintiff's dismissal, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action.  Consequently, Defendant's motion for summary judgement will be granted.

An appropriate Order will follow.

| | |
|---|---|
| February 10, 2006 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD BEVAN,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE RIDGE CABLE/PENCOR SERVICES, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 3:04-CV-0255<br><br>(JUDGE CAPUTO) |

## **ORDER**

**NOW**, this    10th    day of February, 2006, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion For Summary Judgment on All Claims in Plaintiff's Complaint (Doc. 17) is **GRANTED**.

(2) The Clerk of Court shall mark this case **CLOSED**.


　　　　　　　　　　　　　　　　　　　　/s/ A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　United States District Judge